IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ESTATE OF DEVIN KATZFEY,

                                                    OPINION AND ORDER
                        Plaintiff,
                                                         21-cv-385-bbc
            v.

MICHAEL DITTMAN, SUSAN R. NOVAK, KALEN
RUCK, TERRENCE JUDD, LUCAS M. WEBER,
HEATHER SCHWENN, DANIEL FRISCH, KELSEY
STANGE, PSYCHOLOGIST DOE, JEFFREY NGUYEN,
SEAN PRICE, TARA WOODRUFF, LUCAS
WOGERNESE, KENNETH CORNELIUS, RODNEY
KRATZ, BRADLEY MORGAN, JEFFREY REWEY,
MARCI PELOQUIN, CHRISTOPHER OLSON,
SAVANAH BERNDT, JASON KOEHN, AUSTIN
SCHLACHTER, JOHN GAVINSKI AND CHLOE WARE,

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this civil action brought under 42 U.S.C. § 1983, plaintiff Estate of Devin Katzfey alleges that various administrators, psychologists and correctional staff at the Columbia Correctional Institution failed to provide mental health care to inmate Devin Katzfey and failed to protect him from harming himself, resulting in Katzfey's taking his own life on September 1, 2018. Before the court is defendants' motion to dismiss for plaintiff's failure to state any constitutional claim upon which relief may be granted. Dkt. #5. They argue that: (1) plaintiff's § 1983 claims do not survive Katzfey's death; (2) plaintiff cannot hold the supervisory defendants liable for the acts or omissions of their subordinates under a theory of respondeat superior or for a past pattern of indifference under Monell v.

Department of Social Services, 436 U.S. 658 (1978); (3) plaintiff's allegations do not suggest that defendants were personally aware of a serious risk that Katzfey would harm himself or that they were personally involved in the failures leading to Katzfey's death; (4) plaintiff's allegations do not suggest that the psychologist defendants failed to provide Katzfey adequate mental health treatment; and (5) defendants are all entitled to qualified immunity.  Dkt. #5.  In its response, plaintiff states that it is not alleging supervisory liability based on respondeat superior or Monell.  Therefore, it is not necessary to address defendants' second argument regarding any such claims.  For the reasons set out below, the motion to dismiss is denied on defendants' remaining grounds.

## ALLEGATIONS OF FACT

Devin Katzfey arrived at Dodge Correctional Institution on May 5, 2017, when he was 20 years old.  Katzfey had a history of abuse, neglect, mental illness and self-harm.  A few months earlier, he had tried to kill himself by drinking bleach while at the Milwaukee County jail.  The nurse who conducted Katzfey's intake interview at Dodge Correctional recorded that he suffered from a history of bipolar disorder, depression with suicidal ideation and self-cutting and that Katzfey was "very depressed" and appeared "very suicidal."  The nurse noted that Katzfey had what appeared to be self-inflicted wounds on his arm, thigh and neck and wrote "suicidal – high alert."  Soon thereafter, Katzfey was referred for placement at the Wisconsin Resource Center, a state-run mental health treatment facility for residents of Wisconsin prisons.

2

On June 22, 2017, Katzfey was transferred to the Columbia Correctional Institution. Prison officials at Columbia knew from Katzfey's file that he suffered from mental illness and was at serious risk of suicide; the file traveled with him to each facility. Among other things, Katzfey's file included a record of his suicidal thoughts and attempts and the fact that he had hoarded pills and linens, which he had braided into rope before his actions were discovered. In addition, Katzfey had visible cutting wounds on his neck and arms, which stayed fresh because he kept cutting himself.

In early June 2018, Katzfey was sent to segregation. By then, he had submitted a dozen written requests for psychological services. Segregation was bad for Katzfey's mental health because it took him away from some of the things that helped him cope, including access to programing and comfort items like drawings and rap lyrics that he wrote. Defendants Michael Dittman (the warden), Kalen Ruck (deputy warden), Terrence Judd (security supervisor), Lucas Weber (security director) and psychologist Doe approved Katzfey's transfer to segregation knowing about his history with suicide attempts and that the harsh conditions in segregation were likely to cause his mental health to become unstable.

On June 9, 2018, Katzfey submitted a psychological services request form, complaining about being depressed and asking for psychological help. Defendant Daniel Frisch, a psychologist, got the note. Although he had access to Katzfey's file and housing assignment, Frisch sent Katzfey only a generic packet of information and scheduled an appointment for weeks in the future. Less than two weeks later, Katzfey had collected 90

tablets of Tylenol (500 mg each), which he took all at once in an attempt to kill himself on June 21.  Around 9:15 p.m. that evening, Katzfey collapsed on the floor of his cell, where he was shaking and vomiting.  Katzfey's cellmate tried to get the guards' attention.  Although defendants Jeffrey Nguyen, Sean Price, Tara Woodruff, Lucas Wogernese, Kenneth Cornelius, Rodney Kratz, Bradley Morgan, Jeff Rewey and Marci Peloquin heard Katzfey's cellmate yell for help and saw Katzfey lying on the floor in a semi-conscious state, they did nothing to help.  After more than two hours, defendants Cornelius, Kratz, Morgan, Rewey and Peloquin finally entered Katzfey's cell, where they covered his limp body with a shield, shackled his hands and legs and moved him by wheelchair to a "restraint chair."  Katzfey was brought to the hospital sometime after 11:30 p.m.  Defendant Heather Schwenn, a psychologist, was on call the night of June 21, 2018, and was notified about the suicide attempt, as were administrative defendants Ruck and Weber.

On June 23, 2018, Katzfey was released from the hospital and brought back to Columbia, where he was placed in the mental health observation unit for one day before defendants Schwenn and Judd approved his transfer back to the same cell where he had tried to kill himself.  On July 1, Katzfey submitted two requests to psychological staff about being depressed and wanting to speak with his family.  Defendant Kelsey Stange, a psychologist, received one of Katzfey's notes.  Although she knew about Katzfey's situation, she failed to provide him any treatment and wrote back to Katzfey to say only that she did not handle phone calls to families.  Defendant Frisch received the other note but did not respond until

five days later, telling Katzfey to "try to make a phone call during regular phone call times on the unit" or "try writing to the unit manager [or] social worker."

On July 9, 2018, Katzfey submitted another request for help. Frisch received the request but did not schedule an immediate appointment. Six days later, after receiving no care, Katzfey submitted another request, stating "I'm having a hard time coping[.] I need to be seen. Its an emergency. I'm beyond depressed. Listen, I'm beyond depressed. I need to talk to a psychologist NOW." Frisch saw Katzfey two days later, on July 17, 2018, but Katzfey wrote him the same day stating, "Come see me before I snap. I feel like your not taking me seriously." Frisch responded five days later that "You need to be patient. This is an excellent opportunity to work on developing alternative coping skills. See attached packet."

On July 18, 2018, defendants Dittman, Weber and Doe approved Katzfey's continued imprisonment in segregation, despite knowing from Katzfey's statements, medical records and security records that he was experiencing mental health problems and threatening to kill himself. On July 20 and 29, 2018, Katzfey completed requests for psychological services, stating that he needed to talk with his family before he did something that he regrets. Frisch received both requests but did not offer treatment, and only continued to encourage Katzfey to work on his coping skills. Frisch finally scheduled an appointment with Katzfey for August 13, 2018. Before that appointment could occur, defendants Ruck, Judd, Weber and Doe reviewed Katzfey's housing assignment and again agreed it was appropriate to keep Katzfey in segregation as a disciplinary measure.

On the night of August 31 and September 1, 2018, defendants Tara Woodruff, Austin Schachter, Savanah Berndt, Jason Koehn and John Gavinski, and other unknown officers, were assigned to Katzfey's cellhouse and were under the supervision of defendants Wogernese and Cornelius at the time.  These defendants denied Katzfey phone access and knew he was likely to harm himself as a result because Katzfey frequently told them that his inability to connect with his friends and family outside the prison made him feel unstable and suicidal.  None of these defendants obtained any mental health treatment for Katzfey. Around 4:00 a.m. on September 1, 2018, Katzfey hanged himself in his cell by tying a rope made of bed linen to an air vent in the ceiling.

OPINION

A.  <u>Survival of Claims</u>

Plaintiff alleges that defendants violated Katzfey's constitutional rights by failing to prevent his two suicide attempts and that defendants' violations caused Katzfey mental and physical pain and suffering and later, his death, for which plaintiff seeks damages related to the loss of enjoyment of Katzfey's life. Dkt. #1 at ¶¶ 4-8. Defendants argue that plaintiff's § 1983 claims for loss of life damages do not survive Katzfey's death.

Federal law is silent about whether § 1983 claims survive a party's death. <u>Robertson v. Wegmann</u>, 436 U.S. 584, 589 (1978) ("[O]ne specific area not covered by federal law is that relating to 'the survival of civil rights actions under § 1983.'").  When federal law is silent on a particular issue in a civil rights case, federal courts borrow from the law of their

home states, except to the extent that the state law is inconsistent with federal policy underlying the cause of action.  Id. at 589-90 (relying on 42 U.S.C. § 1988(a)); Graham v. Sauk Prairie Police Commission, 915 F.2d 1085, 1104 and n.14 (7th Cir. 1990).

Citing Johnson v. City of Eau Claire, 149 Wis. 194, 135 N.W. 481, 483 (1912), defendants contend that it has been long been settled in Wisconsin that one may only pursue redress for another's death via the wrongful death statute because a defendant should not be twice liable for the same act.  However, as plaintiff points out, the Court of Appeals for the Seventh Circuit has held that "§ 1983 provides Wisconsin plaintiffs with an unqualified right to bring an action to recover loss of life damages even though Wisconsin wrongful death statutes do not permit a victim's estate to recover damages for loss of life." Graham, 915 F.2d at 1104 (citing Bell v. City of Milwaukee, 746 F.2d 1205 (7th Cir. 1984)).  In Bell, the court of appeals reasoned that Wisconsin state law was inconsistent with the federal policy of deterring unconstitutional acts that deprive persons of life.  Bell, 746 F.2d at 1235-36, 1239.  Although Russ v. Watts, 414 F.3d 783 (7th Cir. 2005) later overruled an unrelated holding in Bell, the court of appeals has never revisited its holding regarding the survival of § 1983 claims.

In their reply brief, defendants agree that plaintiff is probably correct about Bell remaining good law on this issue, but they state that they wish to preserve their argument for purposes of appellate review.  Because I agree that Bell forecloses defendants' argument regarding the survival of plaintiff's § 1983 claims for loss of life, I am denying defendants' motion to dismiss on this ground.

B.  Deliberate Indifference

The Eighth Amendment imposes a duty on prison officials to provide "humane conditions of confinement" and to insure that "reasonable measures" are taken to guarantee inmate safety and prevent harm.  Farmer v. Brennan, 511 U.S. 825, 834-35 (1994).  An inmate may prevail on a claim under the Eighth Amendment by showing that the defendant acted with "deliberate indifference" to a "substantial risk of serious harm" to his health or safety.  Id. at 836.  Significant self-harm constitutes "serious harm."  Minix v. Canarecci, 597 F.3d 824, 831 (7th Cir. 2010).  In addition, the Eighth Amendment protects prisoners from "grossly inadequate medical care" for an "objectively serious medical condition."  Lockett v. Bonson, 937 F.3d 1016, 1022 (7th Cir. 2019).  The parties do not seem to deny plaintiff's allegations that Katzfey suffered from mental health issues, expressed thoughts about harming himself and previously attempted suicide or that these allegations suggest that he had serious mental health needs and faced a substantial risk of serious harm.  Rather, defendants argue that plaintiff's allegations are not sufficient to suggest deliberate indifference on the part of defendants.

Deliberate indifference to a risk of self-harm is present when an official is subjectively "aware of the significant likelihood that an inmate may imminently" harm himself, yet "fail[s] to take reasonable steps to prevent the inmate from performing the act."  Pittman ex rel. Hamilton v. County of Madison, Illinois, 746 F.3d 766, 775-76 (7th Cir. 2014) (citations omitted).  See also Rice ex rel. Rice v. Correctional Medical Services, 675 9 F.3d 650, 665 (7th Cir. 2012) ("[P]rison officials have an obligation to intervene when they know

8

a prisoner suffers from self-destructive tendencies."); <u>Davis-Clair v. Turck</u>, 714 Fed. Appx. 605, 606 (7th Cir. 2018) ("A risk of future harm must be 'sure or very likely' to give rise to 'sufficiently imminent dangers' before an official can be liable for ignoring that risk.") (quoting <u>Baze v. Rees</u>, 553 U.S. 35, 50 (2008)).  In addition, medical providers may violate the Eighth Amendment if they prescribe a course of treatment without exercising medical judgment or if they do so knowing that the treatment will be ineffective.  <u>Whiting v. Wexford Health Sources, Inc.</u>, 839 F.3d 658, 662-63 (7th Cir. 2016).

In cases like this one, in which a prisoner alleges that he received some response to his requests for mental health treatment, but those responses were inadequate, the relevant question is whether defendants' actions were "such a substantial departure from accepted professional judgment, practice, or standard, as to demonstrate that the person responsible actually did not base the decision on such a judgment." <u>Estate of Cole by Pardue v. Fromm</u>, 94 F.3d 254, 261-62 (7th Cir. 1996).  In such cases, courts must defer to a medical professional's treatment decision unless no minimally competent professional would have chosen the same course of treatment under the circumstances.  <u>Pyles</u>, 771 F.3d at 409.  A "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." <u>Id.</u>

Finally, plaintiff must show how each of the defendants was personally involved in depriving or delaying plaintiff necessary treatment.  <u>Kuhn v. Goodlow</u>, 678 F.3d 552, 555-56 (7th Cir. 2012).  An individual cannot be held liable in a § 1983 action unless he or

she caused or participated in an alleged unconstitutional deprivation of rights.   Pepper v.
Village of Oak Park, 430 F.3d 805, 810 (7th Cir. 2005).

1. Failure to protect or intervene

Plaintiff alleges that all of the defendants were deliberately indifferent to the serious
risk that Katzfey would harm himself and failed to intervene to stop the deliberate
indifference of other defendants.  Defendants generally contend that plaintiff fails to state
a deliberate indifference claim because its allegations suggest, at most, defendants' general
association with Katzfey and knowledge of a general, non-imminent risk that Katzfey might
harm himself.  Defendants do not make any specific argument with respect to plaintiff's
allegations against each individual defendant.  Rather, they argue generally that defendants
could not have known of Katzfey's imminent risk of self harm because Katzfey made his
most recent statement about harming himself only to one staff member (Frisch) six weeks
before he took his life.

In support of their argument, defendants cite Estate of Novack ex rel. Turbin v.
County of Wood, 226 F.3d 525, 529 (7th Cir. 2000), for the view that "[i]n order to be
liable under the Eighth Amendment, a prison official must be cognizant of the significant
likelihood that an inmate may *imminently* seek to take his own life and must fail to take
reasonable steps to prevent" it.  They also cite three cases in which district courts in this
circuit have found in ruling on a motion for summary judgment that knowledge of a
prisoner's history of self harm or mental illness was insufficient to show deliberate

10

indifference absent knowledge of an *imminent* risk of future self harm.  <u>Williams v. Stacy</u>, 2020 WL 6136148, at *2 (E.D. Wis. Oct. 19, 2020) (plaintiff's statements of wanting to go on observation status and "having suicidal thoughts" did not provide "basis to infer that [defendant] knew [plaintiff] had the means to harm himself or that the risk of future harm was sure or very likely"); <u>Armstead v. Kollman</u>, 2020 WL 206809, at *4 (E.D. Wis. Jan. 14, 2020) (plaintiff's statements to defendant that "she felt unsafe in her room, wanted to talk to psychological services, and felt like cutting herself" insufficient to give defendant notice of a substantial risk of serious harm); <u>Estate of Brown v. Meierdirk</u>, 2008 WL 4630593, *3-5 (W.D. Wis. June 11, 2008) (suicidal comment made two days earlier, suicide attempt 12 years earlier and special precautions taken in light of these things do not show knowledge of an imminent risk of suicide for purposes of deliberate indifference claim).

Although defendants raise a fair point about what plaintiff will be required to prove in order to prevail on its failure to protect claims, they have cited no authority requiring plaintiff to allege specific facts about the imminency of future self harm in its complaint. Plaintiff's allegations are sufficient at this early stage to suggest that each of the defendants knew that Katzfey was at substantial risk of harming himself and intentionally disregarded the risk.  <u>Lisle v. Welborn</u>, 933 F.3d 705, 716-17 (7th Cir. 2019) (quoting  <u>Collins v. Seeman</u>, 462 F.3d 757, 761 (7th Cir. 2006)) ("Where the harm at issue is a suicide or attempted suicide, the second, subjective component of an Eighth Amendment claim requires a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk.").

Plaintiff alleges that defendants Dittman, Novak, Ruck, Weber, Judd, Schwenn and Doe all had a personal role in approving Katzfey's continued placement in segregation despite knowing from Katzfey's statements, medical records and security records that he was experiencing mental health problems, had attempted suicide, was threatening to kill himself and was becoming more unstable as a result of the harsh conditions in segregation. Plaintiff also alleges that psychologist defendants Schwenn, Stange and Frisch all received requests for help from Katzfey but failed to respond with appropriate psychological treatment or otherwise protect him from self harm on June 21 or September 1, 2018. Plaintiff alleges that the remaining correctional officer defendants worked on Katzfey's units, observed him and either failed to help him before and during his first suicide attempt, before his successful attempt or both. Finally, contrary to defendants' contention, plaintiff alleges that Katzfey continued to report, at least verbally, that his inability to connect with his friends and family outside the prison made him feel unstable and suicidal. Whether each of the defendants knew that Katzfey might *imminently* seek to take his own life is a question best decided on a motion for summary judgment or at trial.

2. Psychological treatment

Defendants generally contend that plaintiff has not alleged acts or omissions by any psychologist defendant to suggest that their responses to Katzfey's requests for treatment were so blatantly inappropriate as to rise to the level of deliberate indifference. They argue that only Frisch was involved in Katzfey's treatment during the weeks prior to Katzfey's

death and that Frisch responded appropriately by scheduling an appointment with Katzfey for August 13, 2018.

However, plaintiff made several other allegations against psychologist defendants Frisch, Schwenn, Stange and Doe that are sufficient to suggest deliberate indifference at this early stage. Plaintiff alleges that all of the psychologists were aware of Katzfey's extensive history of mental illness, suicide attempt in jail, cutting, suicidal statements, the June 2018 suicide attempt at the prison and his placement in the same conditions that exacerbated his condition and led to the June suicide attempt. Defendants Frisch, Stange and Schwenn received notes from Katzfey, who described having severe depression and asked for help. According to plaintiff, none of the psychologists provided or arranged for mental health treatment. Although Frisch sent Katzfey a generic packet of information and scheduled a non-emergent appointment with him, Katzfey had been transferred into segregation by the time of the appointment. (It is unclear from the allegations in plaintiff's complaint whether the appointment ever took place.) Stange's response was limited to telling Katzfey that she could not help him call his family. The day after Katzfey was released back to prison from the hospital following his overdose of Tylenol, Schwenn approved his release from observation without offering him treatment. Doe allegedly reviewed and approved Katzfey's transfer to segregation knowing that Katzfey had not been treated for his mental health condition and that the conditions of his segregation had led to a suicide attempt.

At summary judgment or trial, plaintiff will have to adduce evidence to support these allegations and show that defendants' responses were so blatantly inappropriate as to rise to

the level of deliberate indifference.   However, the allegations are enough to survive defendants' motion to dismiss.

## C.  Qualified Immunity

Finally, defendants argue that they are entitled to qualified immunity because it would not have been clear to reasonable officials in their positions that their actions constituted deliberate indifference and violated a reasonably specific right under Supreme Court or Seventh Circuit precedent.  Day v. Wooten, 947 F.3d 453, 460 (7th Cir. 2020) (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015)) ("A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'").   Once a government official raises the qualified immunity defense, a plaintiff must show:  (1) he suffered a violation of a statutory or constitutional right; and (2) the law was "clearly established at the time of the alleged violation." Figgs v. Dawson, 829 F.3d 895, 905 (7th Cir. 2016) (quoting Campbell v. Peters, 256 F.3d 695, 699 (7th Cir. 2001)).  Plaintiff satisfies the first requirement because it has alleged potentially meritorious deliberate indifference claims against defendants, as discussed above.

Plaintiff argues that it has been "clearly established for decades that government officials cannot deliberately ignore an inmate's substantial suicide risk." Howell v. Gallinger, case no. 16-cv-832-jdp, at *6 (W.D. Wis. Mar. 28, 2018) (citing Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001)).  In fact, the court of appeals has rejected similar claims of qualified immunity in other cases involving a prisoner's self-harm.  Estate of Clark v.

Walker, 865 F.3d 544, 551-52 (7th Cir. 2017) ("[The prisoner's] right to be free from deliberate indifference to his risk of suicide while he was in custody was clearly established at the time of his death in 2012."); Cavalieri v. Shepard, 321 F.3d 616, 623 (7th Cir. 2003) ("[T]he right Mrs. Cavalieri asserts on behalf of Steven is the right to be free from deliberate indifference to suicide. There is no doubt that this right was clearly established prior to Steven's suicide attempt."); Hall v. Ryan, 957 F.2d 402, 404-05 (7th Cir. 1992) ("It was clearly established in 1986 that police officers could not be deliberately indifferent to a detainee who is in need of medical attention because of a mental illness or who is a substantial suicide risk.").

In their reply brief, defendants argue that plaintiff does not cite any cases clearly holding a defendant liable for deliberate indifference for knowledge of a general risk of suicide based on past suicide attempts despite no knowledge of a particularized, imminent risk. However, as discussed above, whether defendants had particularized knowledge that Katzfey might imminently seek to take his own life is a question to be decided once the evidence has been developed. Cf. Gutierrez v. Kermon, 722 F.3d 1003, 1014 (7th Cir. 2013) (denying interlocutory appeal because qualified immunity defense turned on disputed facts). Therefore, I conclude that defendants are not entitled to qualified immunity at this stage of the proceedings.

ORDER

IT IS ORDERED that defendants' motion to dismiss, dkt. #5, is DENIED.

Entered this 4th day of January, 2022.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge